DAVID SHAW, Plaintiff, *v.* OLIVER P. OUTWATER and Another, Defendants.

*An indorser of a promissory note guarantees its validity.*

An indorser of a promissory note cannot, in an action thereon, have a defense thereto on the ground of its invalidity for any cause, since, by his contract of indorsement, he himself guarantees its validity as well as its payment.

MOTION by the plaintiff, David Shaw, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance after a trial at the Niagara Circuit, where a verdict of no cause of action was rendered by direction of the court on the 5th day of September, 1892.

*D. P. Brong,* for the motion.

*Q. G. T. Parker,* opposed.

DWIGHT, P. J.:

The action was against maker and indorser of a promissory note for $100, given for " seed grain." The case is one of a class familiar to the courts, but presents some novel features, which complicate the narrative if they do not materially affect the disposition of the case.

All the parties to this action successively yielded to the seductive inducements of a scheme in all respects similar to that known as the " Bohemian Oat Swindle." The pretended corporation at the bottom of the scheme in this case was introduced by its agents as the " Pennsylvania Seed Company, Limited." The agents of the scheme sold oats for seed at fifteen dollars a bushel, and gave what purported to be a " bond " of the company by which it agreed to sell for the purchaser, the next year, double the quantity of oats sold to him, at the same price per bushel which he paid, less thirty-three and a third per cent commissions, he to receive his pay in the notes, presumably of the purchasers of his product. The operation in this case began with the plaintiff. In the fall of 1887, he, in company with another man, bought twenty bushels of the " seed oats," and gave their note for $300, which they paid when it .became due. Their product, or a portion of it, was sold the next fall (1888), by the agents of the scheme, to the defendant Crossman, on the same terms, and the plaintiff received, as his share of the proceeds of the

transaction, Crossman's note for $200. In the fall of 1889, ten bushels of Crossman's product were sold to the defendant Outwater, and Crossman received therefor Outwater's note for $100, which is the note in suit. When Crossman's note, held by the plaintiff, was about to become due, he proposed to take it up if the plaintiff would accept another man's note in part payment; and he offered the plaintiff his choice of two notes of $100 each, one of which was Outwater's. The plaintiff consented to accept the latter if Crossman would indorse it, which he did and delivered it to the plaintiff and paid the balance of his own note in money, and took it up.

Both the defendants seek to defend on the ground of want of consideration for their respective contracts; that those contracts were procured by fraud, and that they were contrary to public policy.

In addition to the facts above briefly recited, the testimony on the part of the defendants tended to show that the agents of the scheme, when the oats were sold to them, respectively, represented the " Pennsylvania Seed Company, Limited," to be a duly incorporated company, and a reliable and responsible institution, and that those representations were false and fraudulent, but the evidence that such representations were made to the defendant Outwater was contradicted by the agent who was charged with making them.

Upon these proofs, the learned judge at the Circuit directed a verdict for both of the defendants. We think the defendants were not entitled to such a direction, but, on the contrary, that the plaintiff was entitled to a verdict in his favor against both of them.

The proposition that the contracts in question were void as against public policy is negatived by the decision of this court in case of *Matson* v. *Blossom* (18 N. Y. St. Repr. 726). The defense of want of consideration evidently fails as to both of the defendants. Outwater gave the note for seed oats which he bought with a speculative intent, and Crossman indorsed the note in consideration of the surrender of his own obligation for the same amount. It is clear, we suppose, that Crossman could have no defense to the note on the ground of its invalidity for any cause, since by his contract of indorsement he himself guaranteed its validity as well as its payment. (*Erwin* v. *Downs*, 15 N. Y. 576; *Remsen* v. *Graves*, 41 id. 475.) And the only ground of defense which remained to Outwater, the maker, was that the note was procured from him by fraudulent rep-

resentations, viz., as to the corporate character and responsibility of the company which gave him the "bond" upon which he relied. But the case is devoid of evidence to show that the plaintiff had any knowledge either that such representations were made to Outwater, or that they were false. He had bought his seed oats two years before of the same company upon similar assurances which had been entirely fulfilled. There seems to be no ground whatever in the evidence before us for the charge, rather freely made in the argument of counsel, that the plaintiff was engaged in promoting the swindle of the "seed grain business." On the contrary, he was, as Crossman and Outwater were, a purchaser of seed grain, for which he gave his note as they did, and, so far as appears, in the same reliance upon the representations and "covenants" of the seed grain company. We find no difference whatever in the legal or moral status of the three in their relations to the scheme. All of them understood the mode of its operation. The defendant Outwater himself testifies that he knew that in order that he should profit by the transaction it must be repeated with some other person. He knew that Crossman had gone into the scheme the previous year, and that this year Crossman's oats were sold to him, and that his note was to go to Crossman. He understood that whereas he was a purchaser of "seed oats" this year, he was to be seller next year, and his only query was "where the thing would stop." Unfortunately for his hopes, it stopped too soon for their realization; the "company" went out of business the winter after he bought his seed, and nobody came the next year to sell his product at fifteen dollars a bushel. This was the risk that all three ran, and the only disadvantage to Outwater was in the time when he purchased. His defense to this action on the record before us fails because he has failed to show that the plaintiff had any knowledge of the particular fraud perpetrated upon him, and, so far as appears, he had the same knowledge of the general nature of the business when he gave the note as the plaintiff had when he bought it.

The plaintiff's motion for a new trial must be granted.

LEWIS, HAIGHT and BRADLEY, JJ., concurred.

Plaintiff's motion for new trial granted, with costs to abide the event.